***NOT FOR PUBLICATION*</u>**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MELVIN SIMS,

    Plaintiff,

v.

CITY OF TRENTON, GROSS & GROSS LLC PROCESS, ALVIN M. GROSS, GROSS & GROSS LLC,

    Defendants.

Civil Action No.: 21-12987 (FLW)

OPINION

**<u>WOLFSON, Chief Judge:</u>**

    On June 25, 2021, *pro se* Plaintiff Melvin Sims ("Plaintiff"), a former Trenton Fire Department employee, initiated this suit against Defendants City of Trenton ("Trenton"), Gross & Gross, LLC, and Alvin M. Gross, Esq. (the "Gross Defendants") (collectively, "Defendants"). In his Complaint, Plaintiff appears to allege that Defendants discriminated and conspired against him after he suffered a workplace injury; he asserts various causes of action. Specifically, Plaintiff brings federal claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1985(3) ("Section 1985"), as well as several state law claims, including malicious abuse of process, civil conspiracy, and intentional infliction of emotional distress.[1]

---

[1] Initially, on August 27, 2021, in response to Plaintiff's Complaint, Trenton filed a Motion for More Definite Statement. (ECF No. 7, Trenton's Motion For More Definite Statement.) Hon. Lois H. Goodman, U.S.M.J., granted the motion on March 18, 2022, and gave Plaintiff leave to amend his Complaint within 30 days. (ECF No. 20, Letter Order Granting Trenton's Motion For More Definite Statement.) On April 1, 2022, instead of filing an amended complaint, Plaintiff filed a letter of clarification to accompany his Complaint. (ECF No. 23, Ex. A to Trenton's Motion to Dismiss, Plaintiff's Clarification Letter ("Letter").) It does not appear to the Court, however, that Plaintiff's letter of clarification is itself an Amended Complaint. To the extent Plaintiff's letter adds to his allegations, the Court will so note. To be clear, the operative Complaint in this matter remains Plaintiff's original Complaint.

1

Presently before the Court are two separate motions to dismiss the Complaint filed by Trenton and the Gross Defendants, respectively. For the reasons explained in this Opinion, Defendants' motions to dismiss are **GRANTED**. Plaintiff's federal claims are dismissed without prejudice, and the Court declines to exercise supplemental jurisdiction over any remaining state law claims at this time. To the extent that Plaintiff believes he can supply additional facts to cure the deficiencies in his federal claims, Plaintiff is afforded one last opportunity to amend his Complaint within 30 days from the date of the accompanying Order.  Should Plaintiff adequately plead his federal claims, the Court will analyze the sufficiency of Plaintiff's state claw claims at that time.  If Plaintiff does not amend his Complaint, or his amendments fail to state any federal claims, the Court will dismiss the Complaint and permit Plaintiff to re-file his state law claims in state court.

I. <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for the purpose of Defendants' motions to dismiss. (ECF No. 1, Plaintiff's Complaint ("Compl.").)[2]

At the outset, I note that the Complaint in this matter is hardly a model of clarity. In fact, it is nearly impossible to discern which of Plaintiff's allegations are targeted at which individual Defendant."[3] Based on the limited allegations, it appears that Plaintiff was previously employed

---

[2]    References to Plaintiff's Complaint are made by page number because the Complaint does not contain separately enumerated paragraphs.

[3]    Plaintiff's allegations of wrongdoing are asserted against all "Defendants," without specifically identifying a particular defendant(s) in each of his causes of action. (*See generally*, Compl.)  This form of "group pleading" is generally prohibited. *See Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297 at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012). When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, 2013 WL 1163751 at * 3

by Trenton at the Trenton Fire Department beginning on September 9, 2013. (Compl., 2.) Plaintiff alleges that he served as a "Technician/Mechanic" for the Department's vehicles, and that he received an annual salary of $36,720. (*Id.*) According to Plaintiff, on January 30, 2014, he fell while working, and suffered an injury to his lower back. (*Id.*) Plaintiff's claims are primarily based on allegations regarding Defendants' conduct after Plaintiff's injury.

First, Plaintiff alleges that, immediately following his injury, he was forced to continue working a more than 19 hours workday. (*See Id.*) In his Clarification Letter, Plaintiff states, "[a]n employee is required by law to have at least 8 hours rest period which I did not get." (Letter, 3.) Further, Plaintiff allegedly notified his supervisor, identified in the Complaint as "Mr. Harris," of his injury on January 31, 2014. (Compl., 2.) Mr. Harris, who is not a defendant, then allegedly drove Plaintiff to receive treatment at "Occupational Health located at 2 Hamilton Health Place."[4] (*Id.*)

It appears from the Complaint that, for some period after Plaintiff notified his supervisor of his injury, Plaintiff did not work. (Compl., 2-3.) Plaintiff further alleges that he was "required to go back to work" on March 24, 2014. (Letter, 1)(emphasis added). However, it does not appear that Plaintiff returned to work on that date. (*See* Compl., 3-4.) Rather, Plaintiff alleges that he was terminated "[with] no letter of termination" and "no unemployment." (Letter, 6.) While Plaintiff does not allege a specific termination date, he does note that, at the time he filed his Complaint, he "ha[d] been unemployed and unable to work" for seven years, since his accident. (Compl., 3.) In

---

(D.N.J. Mar. 19, 2013) (emphasis in original). Here, based on Plaintiff's *pro se* status, the Court will not dismiss Plaintiff's Complaint due to this type of impermissible group pleading; rather, the Court will construe each cause of action to have been asserted against each defendant.

[4]  Confusingly, Plaintiff later alleges that Mr. Harris "falsified that [Plaintiff] did not go to Occupational Health on [January 31, 2014] after working 19 hours on [January 30, 2014][,]" but does indicate why or elaborate any further. (Letter, 4.)

3

addition, Plaintiff alleges that, in April 2014, then Trenton Fire Director Qareeb Bashir asked Plaintiff to "drop the case" and "[Bashir] would see if he could get [Plaintiff] his job back."[5] (Compl., 3.) Next, Plaintiff alleges that in May 2018, defendant Mr. Gross reached out to Plaintiff to provide him "with a recommendation to resolve the [case] for $19,500." (*Id.*) According to Plaintiff, he did not receive this proposed settlement, and therefore, reached out to Mr. Gross in November 2020, to inquire about the settlement. (*Id.*) Mr. Gross allegedly represented to Plaintiff in December 2020, that a "settlement would take place in the next two months."[6] (*Id.*) It does not appear that Plaintiff ever received any settlement funds or otherwise settled his claims with Trenton.

Further, Plaintiff's Complaint contains broad allegations regarding the adequacy of the medical treatment he received for his injury. (Compl., 2-3.) While these allegations do not appear to involve any conduct on the part of any named defendants, I summarize them briefly here. First, Plaintiff generally alleges that the doctors he saw to treat his injury did "not provid[e] [Plaintiff] proper medical care." (Letter, 5.) Specifically, Plaintiff alleges that his doctors refused to evaluate or treat his back injury, and rather examined only his legs and hips. (*Id.* at 3, 4, 5.) On the day of his injury, Plaintiff was allegedly examined by "Dr. Vincent Pierce." (Compl., 2.) Dr. Pierce prescribed Plaintiff ibuprofen, which purportedly made Plaintiff "bleed internally" and "eventually … stopped working." (*Id.*) In addition, Plaintiff was allegedly examined by "Dr. Hue located in Marlton, New Jersey." (*Id.*) According to Plaintiff, Dr. Hue, without examining Plaintiff, opined that there was "nothing wrong with [Plaintiff]." (*Id.* at 3.) Lastly, Plaintiff alleges that he was evaluated by "Dr. Kirschner," who "wrote a document stating that the injury was causally related

---

[5] It is not clear what Plaintiff refers to as "the case". However, it appears that there was a separate employment action brought by Plaintiff. No other details have been provided regarding that action.
[6] It is unclear if Mr. Alvin Gross was retained by Plaintiff to assist him in reaching the aforementioned-settlement, or he was an attorney representing Trenton.

4

to the work incident." (*Id.*) Plaintiff later alleges that Dr. Kirschner "retracted his statement on [Plaintiff's] condition." (Letter, 4.)

In the seven-year period when Plaintiff was allegedly unable to work, Plaintiff purportedly received worker's compensation benefits for "a few weeks." (Compl., 3.) Plaintiff alleges that his total loss of income is approximately $257,040. (*Id.*) Plaintiff also alleges that he has not been able to "pay rent or take care of his family financially," and that his landlord has therefore not charged him rent for several years. (*Id.* at 3-4.) Lastly, it appears from the Complaint that, in March 2019, Plaintiff began receiving social security benefits in the amount of $749 per month. (*Id.*)

Plaintiff asserts multiple federal and state law claims in his Complaint. (*Id.* at 4-12.) In Counts One through Three, Plaintiff alleges that Defendants "conspired to violate the rights[,] privileges, and immunities secured by the United States Constitution and Federal Law" and asserts claims for relief pursuant to Section 1983 and Section 1985. (*Id.* at 11.) In Counts Four through Seven, Plaintiff asserts various state law tort claims, including malicious abuse of process, intentional infliction of emotional distress, and civil conspiracy. (*Id.* at 7-11.) Lastly, in Count Eight, Plaintiff asserts a federal mail fraud claim.[7] (*Id.* at 18.) For each Count, Plaintiff seeks "damages in the amount of $100,000 and further Demands judgements against said Defendants in their personal capacity $50,000[.]" (*Id.* at 5, 6, 7, 9, 10, 11, 12.) Therefore, Plaintiff seeks $2,600,000, plus his alleged loss of income, in damages. (*Id.* at 15.)

---

[7] The Court construes Plaintiff's claim for "mail fraud" as being asserted under 18 U.S.C. § 1341 and 18 U.S.C. § 1343. (*See* Compl., 12.) However, I note that this is not a proper standalone cause of action. *See Jones v. TD Bank*, 468 Fed. Appx. 93, 94 (3d Cir. 2012) ("To the extent that Jones attempted to sue under the Federal Mail Fraud statute, 18 U.S.C. § 1341, he lacked a private right of action to do so."); *Addlespurger v. Corbett*, 461 F. Appx. 82 (3d Cir. 2012) ("[T]here is no private cause of action for a violation of the federal mail and wire fraud statutes"). Thus, the Court dismisses Plaintiff's independent claim for "mail fraud" against Defendants.

Because Plaintiff failed to amend his Complaint when directed by the Magistrate Judge, Trenton filed a Motion to Dismiss Plaintiff's Complaint on April 8, 2022. (*See* ECF No. 23, Trenton's Motion to Dismiss ("Trenton MTD").) Gross Defendants originally filed a Motion to Dismiss Plaintiff's original Complaint[8] on August 31, 2022, to which Plaintiff filed an opposition. (*See* ECF No. 8, Gross Defendant's Motion to Dismiss ("Gross MTD") and ECF No. 12, Plaintiff's Opposition to Gross's Motion; ECF No. 25, Plaintiff's Opposition to Trenton's Motion.) That fully-briefed motion was terminated based on the Magistrate Judge's decision to permit Plaintiff to amend his Complaint. However, because Plaintiff did not file an amended complaint, the Court re-lists the Gross Defendants' Motion for resolution.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citation omitted). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at

---

[8]  Gross Defendants incorrectly filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(e), Motion for a More Definite Statement. Because Gross Defendants seek dismissal of the Complaint prior to filing an answer, the Court will review their motion under Fed. R. Civ. P. 12(b)(6).

570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, because Plaintiff is proceeding *pro se*, I construe his Complaint liberally and in the interests of substantial justice. *See, e.g.*, *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice, keeping in mind that pro se complaints in particular should be construed liberally."); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d. Cir. 2003) ("apply[ing] the applicable law, irrespective of whether the pro se litigant has mentioned it by name," on a motion to dismiss) (citations omitted). Even so, I am not required to credit "bald assertions" or "legal conclusions" simply because Plaintiffs are proceeding *pro se*. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A *pro se* complaint may just as readily be dismissed if it sets forth allegations which cannot be construed to supply facts supporting a claim for relief. *See Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *Grohs v. Yatauro*, 984 F. Supp. 3d 273, 282 (D.N.J. 2013).

### III. <u>DISCUSSION</u>

Defendants seek dismissal of Plaintiff's entire Complaint, arguing that it does not meet the requirements of Fed. R. Civ. P. 8(a)(2) and Fed. R. Civ. P. 10(b),[9] and therefore, does not state

---

[9] Under Fed. R. Civ. P. 10(b) "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). While Plaintiff's Complaint

any claims on which relief can be granted. (*See* Trenton MTD; Gross MTD.) Construing Plaintiff's Complaint liberally, I find that Plaintiff has not pled sufficient facts to state a plausible claim for relief under Section 1983 or Section 1985. Therefore, for the reasons set forth below, Plaintiff's Section 1983 and Section 1985 claims are dismissed without prejudice, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims at this time.

### A. Section 1983 Claims (Counts One, Two, and Three)

In Counts One, Two, and Three of his Complaint, Plaintiff asserts causes of action against Defendants pursuant to Section 1983. (Compl., 5-7.) Section 1983 provides that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured" in an appropriate action. 42 U.S.C. § 1983. Given Plaintiff's group pleading, the Court construes Plaintiff to assert each of his Section 1983 claims against each Defendant. I will consider the merits of Plaintiff's Section 1983 claims against Trenton and the Gross Defendants, in turn.

#### a. Section 1983 Claims against the City of Trenton

With regard to Plaintiff' Section 1983 claims, Trenton argues that Plaintiff's Complaint fails to adequately allege any underlying constitutional violation. (Trenton MTD, 17.) Rather, Trenton contends that, because "the Court [is] left to take on the prohibited task of speculation as to the intended cause of action and what the constitutional violations are[,]" Plaintiff's Section 1983 claims should be dismissed. (*Id.*) I agree with Trenton's position.

---

does not conform to this Rule, I, nevertheless, will not dismiss Plaintiff's Complaint on this basis because of his *pro se* status.

At the outset, Plaintiff's section 1983 claims against Trenton must be dismissed, because Plaintiff has failed to allege any official policy or custom that would subject Trenton to liability. "A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Under *Monell*, "plaintiffs may not rely on a theory of *respondeat superior* to impose liability on municipalities." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Therefore, "[a] plaintiff can attribute a constitutional tort to the city itself by showing the injury was caused by city policy, by city custom, or by policymaking officials' deliberate indifference to constituents' constitutional rights." *Wright v. City of Phila.*, 685 F. App'x 142, 146 (3d Cir. 2017). Here, Plaintiff does not allege any policy or custom on the part of Trenton that resulted in his injuries. Rather, he is attempting to impose liability against Trenton for acts taken by his former supervisors, which is not permissible under § 1983. On this basis alone, Plaintiff's § 1983 claims against Trenton are dismissed.

Even if Plaintiff named an individual defendant subject to § 1983 liability, his claims would nevertheless be dismissed, as well. To state a claim under section 1983, a plaintiff must plausibly allege that (1) Defendant is a "person" who was "acting under color of state law" at the time of the alleged violations, and (2) Defendant's "conduct deprived [Plaintiff] of rights, privileges, or

immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Thus, "[t]he first step in evaluating a [Section] 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Bilbili v. Klein*, 249 F.App'x 284, 287 (3d Cir. 2007) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)).

In his Complaint, Plaintiff does not specifically allege which of his constitutional rights were violated by any of the defendants. Rather, Plaintiff makes broad, conclusory statements that "Defendants conspired to deny [Plaintiff] rights[,] privileges, and immunities secured by the United States Constitution and Federal Law[,]" and that Defendants had "the intent to deny [Plaintiff] equal protection of the law." (Compl., 5.) However, based on Plaintiff's allegations regarding his workplace treatment and eventual termination, it appears that he accuses an individual, employed by Trenton, of employment discrimination. (*Id.* at 2-4.) Employment discrimination claims brought under section 1983 are permissible where a plaintiff plausibly alleges that the discriminatory conduct amounts to a deprivation of a constitutional right. *See Hargrave v. Cnty. of Atlantic*, 262 F. Supp. 2d 393, 440 (3d Cir. 2003) (holding that, where a plaintiff alleges conduct which violates both rights guaranteed by the Constitution and the statutory rights created by Title VII of the Civil Rights Act of 1964 ("Title VII"), that plaintiff may bring either a Title VII claim, a Section 1983 claim, or both). Discrimination in public employment, as Plaintiff appears to allege here, is conduct which can amount to a deprivation of equal protection rights afforded under the Fourteenth Amendment. *See Id.* at 441 (collecting cases). Therefore, the Court first construes the Complaint to allege that Defendants deprived Plaintiff of his equal protection rights under the Fourteenth Amendment.[10]

---

10   The Court does not construe Plaintiff's Complaint to bring a claim under Title VII, which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. §

10

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To assert a violation of equal protection rights in the employment context, a plaintiff must demonstrate "purposeful discrimination," by showing that he received different treatment than other similarly situated persons, and that the disparate treatment was based on his status in a protected class. *Sherrill v. City of Hoboken*, No. 16-3092, 2020 WL 64618, at *3 (citing *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013)). To survive a motion to dismiss, the complaint must make "plausible the conclusion that [similarly situated] parties exist and that they are like [the plaintiff] in all relevant aspects. *See Sherrill*, 2020 WL 64618, at *3 (quoting *Vurimindi v. City of Phila.*, 521 F. App'x 62, 66 (3d Cir. 2013)). Thus, a plaintiff must provide specific allegations identifying similarly situated parties and instances which they were or were not treated differently from the plaintiff. *See Vurimindi*, 521 F. App'x at 66; *Kasper*, 514 F. App'x at 214-15.

Here, Plaintiff fails to meet the most basic requirement of this equal protection claim—he does not allege that he is a member of a protected group. *See Johnson v. N.J. State Bd. of Cosmetology and Hairstyling*, No. 21-10429, 2022 WL 645518, at *5 (D.N.J. Mar. 4, 2022) (holding that Plaintiff's equal protection claim could not survive because "Plaintiff does not

---

2000e-2(a)(1). Indeed, the Complaint is devoid of facts indicating that Plaintiff intends to assert a statutory violation under Title VII, or that he filed the necessary charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Even assuming Plaintiff asserts a Title VII discrimination claim, Plaintiff must allege: (1) he belongs to a protected class; (2) he suffered some form of adverse employment action; and (3) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. *Barnett v. New Jersey Transit Corp.*, 573 F. App'x. 239, 243 (3d Cir. 2014). Here, because Plaintiff does not allege that he is a member of a protected class, he fails to state a Title VII claim.

identify which protected class forms the underpinnings of her claim").[11] Moreover, assuming that Plaintiff is a member of a protected class, he fails to allege any facts indicating that anyone purposefully discriminated against him on the basis of his protected status. Specifically, nowhere in Plaintiff's Complaint does Plaintiff identify or describe similarly situated individuals, or instances where such individuals, were treated more favorably than he. (*See generally* Compl.) Plaintiff's broad, conclusory allegations that Defendants had "intent to deny [Plaintiff] equal protection of laws" cannot plausibly state an equal protection violation. *See Sherrill*, 2020 WL 64618, at *3 (holding that Plaintiff's reliance on "blanket, non-specific allegations" was a "deficiency [that] is fatal to Plaintiff's equal protection claim"); *Hines v. Ferguson*, No. 19-3139, 2019 WL 4772215, at *6 (E.D. Pa. Sept. 27, 2019) (holding that speculative claims of violation of equal protection do not pass muster). Therefore, Plaintiff does not plausibly allege that he was deprived of his equal protection rights, and his Section 1983 claims cannot survive.

Additionally, Plaintiff appears, although not explicitly, to accuse his employer of violating his Fourteenth Amendment due process rights, (Compl., 1, 5), through references to "denial of due process" and "hindering of due justice" in his Complaint. The Fourteenth Amendment's Due Process Clause provides that "[n]o state shall ... deprive any person of life, liberty, or property without Due Process of law." U.S. Const. amend. XIV § 1. To plausibly assert a due process violation on which a section 1983 claim can be based, as a threshold matter, a plaintiff must allege

---

[11] In some cases, an equal protection claim can be sustained where a plaintiff does not allege that he is a member of a protected class, but rather "claims that [he] has been irrationally singled out as a so-called 'class of one.' " *Engquist v. Or. Dept. of Agr.,* 553 U.S. 591, 601 (2008). "A 'class of one' Equal Protection claim requires a plaintiff to show that he 'was intentionally treated differently from others similarly situated ... and that there was no rational basis for such treatment." *Carson v. Mulvihill,* 488 F.App'x 554, 563 (3d Cir.2012) (quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 243 (3d Cir.2008)). Here, because Plaintiff does not allege any facts indicating that he was intentionally treated differently than others, nor that his treatment lacked rational basis, his equal protection claim cannot succeed on a "class of one" theory. *See Carson*, 488 F. App'x at 663.

12

that he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

Here, considering the entirety of Plaintiff's allegations, the Court construes Plaintiff to allege that his employer deprived him of a property interest in his employment without due process. (*See generally*, Compl.) To hold a property interest in employment, a person must have more than a unilateral expectation of continued employment, but rather "have a legitimate entitlement to it." *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988). "[A]n at-will employee does not have a legitimate entitlement to continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). However, an entitlement can be created expressly by state statute or regulation, or by implied contract. *Carter v. City of Phila.*, 989 F.2d 117, 120 (3d Cir. 1993). In either case, the state law determines whether such a property interest exists. *Sherrill v. City of Hoboken*, No. 16-3092, 2020 WL 64618, at *3 (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)).

In New Jersey, employment is presumptively at-will. *Sherrill*, 2020 WL 64618, at *4 (citing *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552 (N.J. 1994)). Therefore, to override that presumption, Plaintiff must allege facts showing a mutual understanding with his employer that Plaintiff's employment was not at will, and that he therefore had a protective property interest in that job. *Sherrill*, 2020 WL 64618, at *4. Here, Plaintiff does not allege any facts which indicate that he has a legitimate property interest in his employment. Rather, Plaintiff only alleges that he was an employee at Trenton Fire Department, without further detail. (Compl., 2.) Therefore, Plaintiff cannot claim that he was deprived of his employment without due process, which dooms his section 1983 due process claims.

### b. Section 1983 Claims Against Gross Defendants

Plaintiff employs the aforementioned broad, conclusory allegations to assert a section 1983 claim against the Gross Defendants. Plaintiff does not allege any specific facts to indicate that the Gross Defendants violated his constitutional rights; in fact, the only specific allegations that Plaintiff asserted against the Gross Defendants involve their past communication with Plaintiff regarding an employment settlement; none of those allegations concern any discrimination. (Compl., 3.) This alone warrants dismissal of Plaintiff's section 1983 claims against the Gross Defendants.

Importantly, Plaintiff fails to allege that the Gross Defendants are state actors to whom section 1983 liability attaches. Private party actors are not liable under section 1983. Rather, "those who deprive persons of federal constitutional or statutory rights 'under the color of any statute, ordinance, regulation, custom or usage' of a state" are subject to § 1983 liability. *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). Thus, to state a claim of liability under section 1983, a plaintiff must allege that he was "deprived of a federal constitutional or a statutory right by a state actor." *Id.* (emphasis added). A private party's challenged action may be considered a state action when it results from the state's exercise of "coercive power" or when the state provides "significant encouragement, either overt or covert." *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citations and internal quotation marks omitted). In addition, the Supreme Court has treated private entities as state actors when a private actor operates as a willful participant in joint activity with the state or its agents; when it is controlled by an agency of the state; when it has been delegated a public function by the state; when it is entwined with governmental policies; or when the government is entwined with its management or control. *See Id.*

Here, Plaintiff does not allege any facts to show that the Gross Defendants are state actors. Indeed, there are no allegations to determine how the Gross Defendants interacted with Trenton. Moreover, the Court is even unable to discern whether Mr. Gross represented Plaintiff or Trenton. Because the Complaint lacks the most basic facts regarding the Gross Defendants' role, Plaintiff's section 1983 claims against these defendants are dismissed without prejudice.

### c. Statute of Limitations

In addition, Trenton argues that Plaintiff's Section 1983 claims are time-barred because Plaintiff did not file his Complaint within two years of the alleged injury and discriminatory treatment. (Trenton MTD, 16.) While Section 1983 has no statute of limitations of its own, it adopts the statute of limitations from state personal injury torts. *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). In New Jersey, personal injury torts have a two-year statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (discussing N.J. Stat. Ann. § 2A:14-2). Federal law, however, governs the date when a Section 1983 claim accrues and when the statute of limitations begins to run. *Nguyen*, 906 F.3d at 273. "A claim accrues when the last act needed to complete the tort occurs." *Id.*

Further, New Jersey recognizes the continuing violations doctrine, which is "an equitable exception to the statute of limitations." *Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010). "The doctrine provides that when an individual experiences a 'continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases.'" *Id*. (quoting *Wilson v. Wal-Mart Stores*, 729 A.2d 1006, 1010 (N.J. 1999)); *Ashley v. Metelow*, No. 15-3153, 2018 WL 4462413, at *5 (D.N.J. Sept. 18, 2018). The continuing violations doctrine "applies when a defendant's conduct is part of a continuing practice." *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019).

Here, it appears from the face of the Complaint that the statute of limitations bars Plaintiff's section 1983 claims. Specifically, the injury and subsequent discriminatory treatment on which Plaintiff bases his section 1983 claims occurred in January 2014, seven years prior to Plaintiff filing his Complaint. (Compl., 2, 3.) Further, because it appears that Plaintiff was terminated at some time closely following his injury, there is no basis to find that Plaintiff can toll his claims based on the continuing violations doctrine. Out of an abundance of caution, however, because Plaintiff did not amend his Complaint when directed by the Magistrate Judge, the Court will provide Plaintiff one last opportunity to amend his Complaint; Plaintiff must not only substantively allege the basis for his section 1983 claims, but also allege facts, if any, to support a continuing violation theory.

B. **Section 1985 Claim (Count 2)**

In the Complaint, Plaintiff also appears to allege that Defendants conspired against him to deprive him of his constitutional rights, and therefore seeks relief pursuant to Section 1985. (Compl., 5-6.) I conclude that Plaintiff fails to state a plausible claim for relief under Section 1985.

Section 1985 provides a private cause of action for damages incurred "[i]f two or more persons ... conspire ... for the purpose of depriving ... any person of the equal protection of the laws." 42 U.S.C. § 1985(3). In order to assert a cause of action under Section 1985, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)).

16

Here, Plaintiff does not allege any facts in support of the first element: the existence of a conspiracy. Specifically, nothing in Plaintiff's Complaint suggests an agreement or concerted action amongst the defendants. *See Startzell v. City of Phila.*, 533 F.3d 183, 205 ("To constitute a conspiracy, there must be a 'meeting of the minds.' " (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970))); *Aulisio v. Chiampi*, 765 F. App'x 760, 764 (3d Cir. 2019) (dismissing conspiracy claim against state prison officials because inmate-prisoner "offered nothing more than conclusory statements that Defendants conspired to deprive him of his constitutional rights; no evidence suggests that they agreed, plotted, or even discussed doing so"). Rather, Plaintiff merely relies on the conclusory statement that "two or more persons did conspire to go in disguise to depriving [Plaintiff] equal protection of the law." (Compl., 6.) Accordingly, Plaintiffs' Section 1985 conspiracy claim is dismissed without prejudice.

C. **State Law Claims**

The Court construes Plaintiff to bring his remaining claims for malicious abuse of process, intentional infliction of emotional distress, and civil conspiracy under state law. Because the Court has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which

17

it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cnty., Pennsylvania*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.' " *Growth Horizons*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, 983 F.2d at 1284-85.

Here, the Court has dismissed the federal claims at the earliest possible stage of the proceedings and exercises its discretion to decline supplemental jurisdiction over any possible state law claims. Therefore, at this time, the Court does not analyze whether Plaintiff's state law claims have merit. Should Plaintiff replead his Complaint and properly allege a federal claim, the Court will then exercise supplemental jurisdiction and determine whether Plaintiff's state law claims have merit. If Plaintiff is unable to provide sufficient allegations in support of his federal claims, he may file his state law claims in the state court within the 30 days of an order to be issued. *See* 28 U.S.C. § 1367(d).

## IV.   **CONCLUSION**

Plaintiff's Complaint, as pled, fails to state any federal claim upon which relief can be granted. The Court notes that Plaintiff was already provided the opportunity to replead his claims by the Magistrate Judge. However, because that opportunity was not in response to a Motion to Dismiss, the Court will provide Plaintiff with a final chance to amend his Complaint within 21 days of the Order accompanying this Opinion. If Plaintiff does not file an amended complaint, the dismissal without prejudice of his federal claims will automatically be converted to a dismissal with prejudice, and his state claims will be dismissed without prejudice, with the right to re-file

them in state court. As such, for the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's federal claims are dismissed without prejudice, and the Court declines supplemental jurisdiction over any remaining state law claims at this time. An appropriate Order shall follow.

Date:   August 25, 2022                                                  /s/ Freda L. Wolfson
                                                                          Freda L. Wolfson
                                                                          U.S. Chief District Judge